The Chief Justice
delivered the opinion of the court.
This is an appeal taken by the lessor of the plaintiff, from a judgment rendered for the defendant in an action ot’ ejectment.
On the trial ip the circuit court, Gillaspie, the lessor of thf plaintiff, in support of his title, produced in evidence a *78 patent from the commonwealth for 862 1 2 acres of land granted !o him and Robert Johnson, as assignees of Stephen Archer, “to have and to hold the said tract of land, “•with its appurtenances, to the said Gillaspie and Johnson, “(.agreeable to their respective proportions,) and to their heirs “forever.” He also read in evidence a copy of the original plot and certificate of survey, with an assignment thereon from Archer, of 431 1 4 acres, to be laid off at the north end of the survey to Johnson, and of the balance of 431 1-4 acres at the south end o<- the survey to the lessor of the plaintiff. And from the connected plat in the cause, it appeared that the land in controversy lay in the southern end of i he survey.
The defendants, on their part, produced in evidence ⅞ patent from the commonwealth fb Benjamin Johnson, including the land in controversy, but of younger date than that under which the lessor of the plaintiff claimed aud deduced title to themselves under it. Some of the defendants claimed as heirs of Benjamin Johnson: some by conveyance to themselves or ancestors from Benjamin Johnson or his heirs, but others clainfed by conveyances either mediately or immediately from Robert Johnson, who held a conveyance from Benjamin Johnson. And all of them proved that they hadbeen in the continued possession of their respective parcels for 16 or 18 years, and relied on the statute of limitations, approved the 9th of February, 1809. The lessor of the plaintiff thereupon moved the court to instruct tile jury, that the possession of defendants (except that of Benj, Johnson’s heirs and Lindsay’s heirs,) was not adverse to the clainkof the lessor of the plaintiff, and that the statute could not protect them in this action; but the court overruled t he mol ion, and the lessor of the plaintiff excepted. Whether the circuit court erred in refusing thus to instruct the jury, is the first question piesentedby the record.
The motion to instruct was predicated upon the idea that the patent to Robert Johnson and the lessor of the plaintiff, was a grant to them of an estate in common in the whole tract, and not a grant of their respective parts in severalty, and therefore it is inferred, that the possession gained by Johnson, or those claiming under him, would enure to the benefit of the lessor of the plaintiff, and could not be adverse to his claim. *
it was no doubt intended that the patent should operate as a grant to the patentees in severally ,©! the parts to which *79 they were respectively entitled, by the assignment to them Upon the plat and certificate of survey. But if the patent be construed without reference to the assignment, it can only have the effect of a grant to the patentees of an estate in common; and it is extremely questionable whether the assignment can be resorted to fortpe purpose of controiing the operation of the patent. That is a point, however, we do not deem material to be decided; for; admitting thp patent to operate as a grant to the patentees of the^vhole tract in common, and not is a grant to each for his réspec^ tive part in severalty, still it would not follow as a legal consequence that the possession of the defendants, who bold under Johnson, was not adverse to the claim of the lessor of the plaintiff. The relation between tenants in common, or even between joist tenants, is not such as to estop one co-tenant from acquiring and bolding the possession adversely to another. It is true, where one tenant In common, or joint tenant, enters generally, it will be presumed to be for the purpose of acquiring and holding the possession for the benefit of his co tenant as weli as himself; but this is but a presumption of fact, which may be repel!ed bv other evidence; and here all the circumstances of the case conduce to shew, that the defendants entered and held the possession of their respective parcels, claiming title to the whole in severalty, and not as co-tenants of the lessor of the plaintiff. ’
. "⅛' two tenant* igpommonor -1,0 nt tenams> Ce3s»rUy es-top one from acquiring' k geggiorT a5-* versely to his cotenantj thn' „nf! tenant ⅛ common en. Xers generally session will enure to the ;t ⅛° not fame th-t if one 1enant <.nters on a part w.th in-ieni ⅛ ’’⅛! ion enures ⅛ benefit of tation nm» at-gainst fcoy
If, then, the defendants held adversely it results, as they deduced a connected title from the interfering patent granted to Benjamin Johnson, that they are within the letter as well as spirit ef the statute of 1809, and consequently the circuit court decided correctly in refusing to giye the instructions asked for by the lessor of the plaintiff.
The onlv other question presented by the record, grows out ot a billot exceptions taken to the opinion of the cir cuit court, in admitting as evidence a copy of a power of attorney from James Barbour to Richard M. Johnson, bear ing date the 7th of October, 1802, The copy was attested by the clerk of Scott county court, who certified that on the 29th of October, 1802, the original was proven him in his office by one of three subscribing witnesses thereto, and admitted to record. The copy was also proy-edio be correct by Richard M. Johnson, who deposed to the execution of the .original po-'ver bv Barbour, sod that he had searched for it and could not find it; but neither *80 Hie subscribing witnesses was called to prove itsexecutiorij nor is there any reason alledged in the bill of exceptions for not doing so.
WickVjje and Breckenridge for appellant, Hoggin contra*
Under these circumstances, we think the copy could not have been properly admitted as evidence.
At the lime when the power in question was admitted to record, the clerk of the county court of Scott had no authority to record it, upon proof of its execution by any number of subscribing Witnesses, much less could he have done so upon its being proved by one witness only. The county courts were authorised to take the acknowledgement of a power, and thereupon to admit it to record: and the clerks, in their offices, had the same authority; but we are aware of no law which authorised either the county courts or the clerks to admit to record a power of attorney on proof of its execution by witnesses, at the time when the power in question was admitted to record by the clerk of the Scott county court. The act of the clerk, therefore, in taking proof of its execution, and admitting it to record, being unauthorised, was a mere nullity, and, consequently, the copy attested by him could not be received as evidence. The copy, however, was proven to be correct, and the absence of the original was.sufficiently accounted for by the testimony of Johnson to let in inferior evidence. But to render such evidence admissible, the execution of the original power should have been proved, and the testimony of Johnson was incompetent for that purpose, unless the subscribing witness had been shewn to be dead, or in a situation not to be produced on the trial. For it is a settled rule, that if there be a subscribing witness to an instrument, who is living, and in a situation to be examined, he alone is competent to prove its execution. Aud so inflexible is 1 lie rule, that the confession or acknowledgement of a party to the instrument, whether it is offered as evidence against him, or against a third person, will not excuse this testimony^ Nor does it make any difference whether the instrument be in existence or not. For although it be concealed or lost, and a copy, or other evidence of its contents be given, still the subscribing witness, if known, must be called. Peak’s Ev. 100. The judgment on this ground is erroneous, and must be reversed with costs, and the cause be remanded for a new trial not inconsistent with this opinion.